UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **RIGOBERTO SANTIAGO,** ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) Case No. 22-cv-10360-DJC <br> **MARTIN O'MALLEY,** Acting Commissioner ) <br> of the Social Security Administration, ) <br> ) <br> Defendant. ) | |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                              **March 25, 2024**

## I.  Introduction

Plaintiff Rigoberto Santiago ("Santiago") filed claims for disability insurance benefits ("SSDI") and supplemental security income ("SSI") with the Social Security Administration ("SSA"). Pursuant to the procedures set forth in the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), Santiago brought this action for judicial review of the final decision of the Commissioner[1] of the Social Security Administration ("the Commissioner"), issued by an Administrative Law Judge ("ALJ") on December 31, 2021, denying his claim. Santiago has moved to reverse and remand the decision of the Commissioner, D. 19, and the Commissioner has moved to affirm the decision. D. 20. For the reasons stated below, Santiago's motion to reverse and remand is DENIED, and the Commissioner's motion to affirm is ALLOWED.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), the Court substitutes the name of Martin O'Malley, the Commissioner, as the Defendant here.

## II. Legal Standards

### A. Entitlement to Disability Benefits and Supplemental Security Income

To receive SSDI and SSI benefits, a claimant must demonstrate that he is disabled, as defined by the Social Security Act (the "Act") and corresponding regulations. 42 U.S.C. § 423(a). Disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than [twelve] months." Id. §§ 416(i), 423(d)(1)(a); 20 C.F.R. § 404.1505. The impact of the disability must be so severe as to prevent a claimant from not only maintaining employment similar to previous work, but also from doing any substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505–404.1511.

The Commissioner must follow a five-step process to determine whether a claimant has a disability for Social Security purposes and, thus, whether to approve the claimant's application for benefits. 20 C.F.R. § 416.920(a). If at any step in the process the Commissioner conclusively finds the claimant to be disabled or not disabled, then the inquiry ends. Id. § 416.920(a)(4). First, if the claimant is engaged in substantial gainful work activity, then the claimant is not disabled. Id. § 416.920(a)(4)(i). Second, if the claimant does not have, or has not had during the relevant time period, a severe, medically determinable physical or mental impairment or combination of impairments, then the claimant is not disabled. Id. § 416.920(a)(4)(ii). Third, if the impairment(s) meets the conditions for one of the "listed" impairments in the Social Security regulations, then the claimant is disabled. Id. § 416.920(a)(4)(iii). Fourth, if the applicant's "residual functional capacity" ("RFC") shows that the claimant can still perform past relevant work, then the claimant is not disabled Id. § 416.920(a)(4)(iv). Fifth and finally, if the claimant's RFC, education, work

experience and age show that the claimant is capable of any other work in the national economy, then the claimant is not disabled.  Id. § 416.920(a)(4)(v); see id. § 416.960(c).

### B. Standard of Review

This Court may affirm, modify or reverse the decision of the Commissioner upon review of the pleadings and the record.  42 U.S.C. § 405(g).  Such review is limited to an evaluation of "whether there is substantial evidence to support the ALJ's fact findings and whether appropriate legal standards were employed."  Jones v. Soc. Sec. Admin., 150 F. App'x 1, 1–2 (1st Cir. 2005) (citing Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999)).  Accordingly, the ALJ's findings of fact must be affirmed when supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion."  Rodriguez v. Sec'y of Health & Hum. Servs., 647 F.2d 218, 222 (1st Cir. 1981).  A denial of relief will not be upheld, however, where there has been an error of law.  See Manso-Pizzaro v. Sec'y of Health & Hum. Servs., 76 F.3d 15, 16 (1st Cir. 1996).  The district court reviews questions of law *de novo*.  Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001).

## III. Factual Background

### A. Procedural History

Santiago claimed an inability to work since September 14, 2013.  R. 21.[2]  He was forty-eight years old as of the alleged onset date.  R. 30.  On or about November 9, 2016, Santiago applied for SSDI and SSI.  R. 21.  He alleged impairments including lumbar degenerative disc disease, seronegative rheumatoid arthritis, obesity, history of subacromial bursitis, depression, anxiety, posttraumatic stress disorder, borderline intellectual functioning, asthma, vitamin D

---

[2] Citations to the administrative record in this case shall be to "R. ___."

deficiency and hypertension. R. 23–24. After initial review, his claims were denied on January 24, 2017. R. 21. Santiago requested reconsideration of the initial denial; the SSA concluded that the denial was proper and informed Santiago of the same on April 12, 2017. R. 21. On April 18, 2017, Santiago requested a hearing before an ALJ. R. 21. A hearing was held before an ALJ on July 2, 2018. R. 21. On February 21, 2019, the ALJ issued a written decision concluding that Santiago was not disabled. R. 32. Santiago appealed the decision to the SSA Appeals Council ("AC"), which declined review on December 31, 2019. R. 1.

Santiago filed a complaint before another session of this Court, seeking review and remand of the ALJ's decision. R. 2132–33. The Court reversed and remanded the decision of the Commissioner, directing the ALJ to reconcile conflicting Vocational Expert ("VE") testimony. R. 2019, 2145-46; see Santiago v. Saul, No. 1:20-cv-10266-LTS, 2021 WL 11704593 (D. Mass. Jan. 20, 2021). The AC then remanded the case to the ALJ for further proceedings on March 19, 2021. R. 2151.

The ALJ held a hearing on July 9, 2021 and a supplemental hearing on December 14, 2021. R. 2019. During the supplemental hearing, Santiago amended his alleged onset date to October 8, 2018. R. 2019. On December 27, 2021, the ALJ issued a written decision concluding that Santiago was not disabled. R. 2019–2034. The parties agree that this decision is the final decision of the Commissioner.[3] D. 1 ¶¶ 3–4; D. 13 ¶¶ 3–4. Santiago filed this lawsuit against the Commissioner, D. 1, and now moves this Court for an order reversing and remanding the Commissioner's final decision. D. 19. The Commissioner has moved for an order affirming the same. D. 20.

---

[3] The record does not include a notice that the AC denied review of Santiago's appeal of the ALJ's December 27, 2021 decision. However, Santiago alleges in his complaint that he has exhausted all administrative remedies, D. 1 ¶¶ 3–4, and the Commissioner admits the same in his answer. D. 13 ¶¶ 3–4. The parties do not dispute that the ALJ's December 27, 2021 decision is the final decision of the Commissioner.

**B.     Before the ALJ**

The record before the ALJ included the following: (1) testimony at the ALJ hearings; (2) Santiago's medical records; and (3) assessments of Santiago's RFC by state agency experts.

*1.     Testimony at the ALJ Hearings*

Santiago testified before the ALJ at the July 9, 2021 hearing. R. 2066. He stated that his primary physical impairments were back pain, rheumatoid arthritis and fibromyalgia. R. 2069. He added that the symptoms associated with these impairments had gotten worse and that he was receiving cortisone shots every other week to help relieve pain. R. 2069. He noted that the shots were not helpful because they only relieved pain for around one week. R. 2076. Santiago testified that he suffered from mental impairments including post-traumatic stress disorder ("PTSD"), bipolar disorder and attention deficit hyperactivity disorder ("ADHD") and that his symptoms associated with these impairments had persisted. R. 2071. He also stated that he was trying to find a new psychiatric provider. R. 2070. Santiago testified that aides came to his home to help him with his medication and housework. R. 2071. As to back pain, Santiago explained that he had not had any treatment besides prescription painkillers from March 2018 to April 2021. R. 2075. He also said that he was taking medication for high blood pressure and depression and that he was using inhalers to treat his asthma. R. 2077.[4]

Santiago testified before the ALJ again on December 14, 2021. R. 2045. At the hearing, Santiago testified that since the July 9, 2021 hearing, he had four cortisone shots in his lower back and had begun seeing a new therapist. R. 2049–50. He noted that his doctor prescribed medication

---

[4] At the July 9, 2021 hearing, the ALJ also heard testimony from VE Melissa Fass-Karlin, R. 2078–81, 2083–95, but because Santiago's attorney did not have an opportunity to cross-examine her, the ALJ did not rely on her testimony. R. 2046–47.

5

to treat his anxiety.  R. 2048.  Santiago also amended the alleged onset date for his asserted disability to October 8, 2018, his fiftieth birthday.  R. 2061.

The ALJ also heard testimony from VE Julian Shields.  R. 2052–59.  Shields testified about Santiago's past relevant work at UPS.  R. 2054.  He testified that Santiago's work at UPS was a "medium occupation" that was actually performed as a "very heavy occupation."  R. 2054.  The ALJ then asked Shields a series of hypotheticals to discern whether individuals with RFCs potentially comparable to Santiago's functional capacity could perform Santiago's past work and whether there would be other jobs in the national economy that could be performed by such hypothetical individuals.  R. 2055–59.  Shields testified that none of these hypothetical individuals could perform Santiago's past work, but that some of them could perform alternative jobs in the national economy.  R. 2056–59.

        2.     *Santiago's Medical Records*

In addition to Santiago's testimony, the ALJ also considered his medical records.  Santiago reported severe low back pain to healthcare providers.  R. 1473, 2407.  In March 2018, Santiago received shots to help with his back pain.  R. 1477–78.  He had significant relief of his pre-injection symptoms for about a year and a half before his pain started to return.  R. 2458.  Santiago received shots in April 2021 and May 2021 to treat this pain.  R. 2450, 2454.  Santiago was also prescribed medication for pain.  R. 398, 2407.

Santiago's medical records show that he also suffered from obesity and arthritis.  R. 2415, 2417, 2429.  He has received treatment for asthma, R. 2425, and he has received homecare services for his impairments.  R. 2636–97, 2719–2853.

Santiago's medical history also shows evidence of walking regularly.  In June 2019, he began walking with his mother and lost nine pounds.  R. 2490.  He stated in August 2019 that he

walked daily.  R. 2468.  He reported walking "a lot" in November 2019.  R. 2417.  In January 2020, he reported taking care of his ex-wife, walking more and doing housework.  R. 2415.  In April 2020, Santiago claimed he was "active" throughout the day.  R. 2409.

Santiago's records also show that he has suffered from mental illnesses.  In September 2019, Santiago's medical records show diagnoses of bipolar disorder, generalized anxiety disorder, PTSD and ADHD.  R. 2464.  In January 2019, he described his anxiety as manageable with medication, R. 2540, and in August 2019, he reported having no issues with medication and only occasional irritability and mood swings.  R. 2468.

### 3. Expert Assessments

The ALJ considered the opinions of Dr. Kriston, Dr. Poirier and Dr. Rao with respect to Santiago's physical impairments.  R. 2029.  The ALJ also considered the opinions of Dr. Derecho, Dr. Maliszewski, Ms. Eideh and Ms. Dutra with respect to Santiago's mental impairments.  R. 2030.  State agency medical consultants Dr. Kriston and Dr. Poirier opined in 2017 that Santiago could "sustain a range of light work" limited by standing or walking for a maximum of four hours out of an eight-hour day.  R. 2029.  Treating physician Dr. Rao provided diagnosis of Santiago's conditions but did not provide any opinion on how these conditions would affect Santiago's ability to do work or whether those conditions would render Santiago disabled.  R. 2029–30.

State agency medical consultants Dr. Derecho and Dr. Maliszewski opined in 2017 that Santiago would have "no more than moderate limitation" resulting from his mental impairments.  R. 2030.  In February 2018, treating source Ms. Eideh opined that Santiago would have "level four (marked) impairment in a range of domains" due to his mental impairments.  R. 2030.  In March 2017, Ms. Dutra opined that Santiago "would be unable to meet competitive standards in a range of functional domains."  R. 2030.

### C. The ALJ's Decision

Following the five-step process to evaluate whether a claimant is disabled, 20 C.F.R. § 416.920, at step one, the ALJ found that Santiago had not engaged in substantial gainful activity since October 8, 2018, the amended alleged onset date. R. 2021–22. At step two, the ALJ found that Santiago suffered from the following severe impairments: obesity, degenerative disc disease of the lumbar spine, rheumatoid arthritis, asthma, depressive disorder and anxiety disorder. R. 2022. At step three, the ALJ found that Santiago did not have an impairment, alone or in combination, that was one of the "listed impairments" in Social Security regulations that require a finding of disability. R. 2022–24.

Before proceeding to step four, the ALJ determined Santiago's RFC through a two-step analysis. R. 2024–31. First, the ALJ considered Santiago's physical or mental impairments that could reasonably be expected to produce his alleged symptoms. R. 2025–28. Second, the ALJ evaluated the "intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities." R. 2027–31.

As to the first step of identifying Santiago's impairments, the ALJ relied upon medical records to conclude that Santiago was affected by "obesity, degenerative disc disease of the lumbar spine, rheumatoid arthritis, and asthma." R. 2026. The ALJ also noted that Santiago was affected by depression and anxiety. R. 2028.

As to the intensity, persistence and limiting effects of these impairments, the ALJ concluded that Santiago's "statements concerning the intensity, persistence and limiting effects of [the alleged] symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 2026. With respect to Santiago's physical impairments, the ALJ found that "the record as a whole fails to support [Santiago's] alleged limitations as described." R. 2027. With

respect to Santiago's mental impairments, the ALJ concluded that "there is insufficient treatment history, objective medical evidence, and clinical findings to support a finding of disability." R. 2028.

The ALJ highlighted inconsistencies between Santiago's allegations and the medical record evidence.  For example, the ALJ noted that the imaging of Santiago's spine showed "minimal findings."  R. 2027.  This imaging was "performed quite remotely, in April 2011, with no subsequent scans in the record showing substantial decline in functioning."  R. 2027.  The ALJ noted that Santiago's treatments during the period between the amended alleged onset date and the date of the ALJ's decision "focused more on mental health treatment, rather than physical treatment."  R. 2027.  The ALJ further observed that there was "no rheumatology care documented in the record" and "very limited orthopedic care."  R. 2027.  The orthopedic visit in April 2021 showed "some deficits, [but] it does not show substantial limitation in the use of upper or lower extremities that would support further erosion of the occupational base."  R. 2027.  The ALJ stated that "the record supports a finding that prescribed treatment helps manage pain."  R. 2027.  The ALJ also noted that Santiago was not "receiving a more rigorous course of treatment involving extensive physical or occupational therapy."  R. 2027.  The ALJ concluded that Santiago's "generally limited course of treatment fails to fully support the claimant's pain as alleged." R. 2027.

The ALJ then addressed Santiago's claimed limitations as to standing and walking.  The ALJ determined that "despite arguing that [Santiago] is substantially limited in his ability to stand and walk and should be restricted to sedentary work, the record as a whole supports a finding that he could stand and walk for six hours in an eight-hour day."  R. 2027.  The ALJ acknowledged that this was a change from the more limited ability to walk that the ALJ had outlined in the RFC

in his prior decision.  R. 2027.  In support of this change, however, the ALJ cited "evidence dating during the period under review [that] consistently shows that the claimant's ability to stand and walk has improved to the point he can now do so for up to six hours in an eight-hour day."  R. 2027.  The ALJ pointed to instances where Santiago went on walks and lost weight.  R. 2027.  The ALJ also pointed to instances in medical examinations where Santiago reported walking for exercise, performing housework and taking care of his ex-wife.  R. 2028.  Furthermore, an examination showed that Santiago was "ambulating independently with steady gait."  R. 2027–28.  The ALJ determined that Santiago was "able to walk regularly for exercise and should not be restricted to standing and walking no more than two or four hours in an eight-hour day."  R. 2028.

The ALJ then considered Santiago's mental impairments.  The ALJ stated that although Santiago "subjectively alleges significant symptoms . . . , the record as a whole fails to support his alleged limitations as described."  R. 2028.  In support of this conclusion, the ALJ pointed to evidence in the record that Santiago applied for jobs and took trips.  R. 2028.  The ALJ noted that "[t]hese activities are inconsistent with more significant mental health functional limitations."  R. 2028.  Furthermore, Santiago reported that his medications were "at least somewhat helpful in managing symptoms."  R. 2028.  The ALJ, therefore, determined that there was "insufficient treatment history, objective medical evidence, and clinical findings to support a finding of disability."  R. 2028.

Accordingly, the ALJ determined that Santiago has the RFC "to perform light work as defined in 20 C.F.R. § 416.967(b)" with the following exceptions:

> he could never climb ladders, ropes, or scaffolds and never crawl, but could occasionally stoop, crouch, kneel, and climb ramps and stairs; he could occasionally overhead reach; he could have no extreme cold, heat, wetness, or humidity and no concentrated fumes, odors, dusts, gasses [sic], poorly ventilated areas, or concentrated chemicals; and he must avoid excessive vibration, moving machinery, and unprotected heights in a work setting.  He is limited to simple,

routing, repetitive tasks; he cannot interact with the public as a basic part of the job responsibilities, but this does not preclude superficial contact with the public in passing; and he can have only occasional interaction with co-workers and only occasional supervision.

R. 2024–25.

In arriving at the RFC, the ALJ stated that he considered the medical opinions of several different experts. With respect to Santiago's physical impairments, the ALJ considered the medical opinions of Dr. Kriston, Dr. Poirier and Dr. Rao. R. 2029–30. Dr. Kriston and Dr. Poirier opined that Santiago "could sustain a range of light-exertional work" with some limitations. R. 2029. One such limitation was that Santiago should be limited to four hours of standing or walking in a day. R. 2029. The ALJ afforded "partial weight" to these opinions and based the physical limitation portions of Santiago's RFC on their opinions. R. 2029. The ALJ determined that Santiago's walking ability had improved since the experts rendered their opinions in light of updated medical records. R. 2029. The ALJ considered Dr. Rao's opinion but afforded it "limited weight." R. 2029–30. Only some portions of the forms that Dr. Rao submitted were completed and Dr. Rao did not provide a statement on "what [e]ffect [Santiago's] conditions have on his ability to work." R. 2029–30.

With respect to Santiago's mental impairments, the ALJ considered the medical opinions of Dr. Derecho, Dr. Maliszewski, Ms. Eideh and Ms. Dutra. R. 2030. The ALJ afforded the opinions of Dr. Derecho and Dr. Maliszewski "great weight" and the opinions of Ms. Eideh and Ms. Dutra "limited weight." R. 2030. The ALJ based Santiago's mental RFC on the opinions of Dr. Derecho and Dr. Maliszewski. R. 173–75, 191–93, 2030–31.

Having determined Santiago's RFC, the ALJ proceeded to steps four and five. At step four, the ALJ found that Santiago was unable to perform past relevant work. R. 2031. At step

11

five, the ALJ determined that, given the claimant's age, work experience and RFC, "there are jobs that exist in significant numbers in the national economy that [Santiago] can perform."  R. 2031.

## IV. Discussion

First, Santiago argues that the ALJ erred because he violated the "mandate rule" by not limiting his decision to the resolution of conflicting VE testimony at step five.  D. 19 at 8–13.  Second, Santiago contends that the ALJ's RFC determination was not supported by substantial evidence because the ALJ purportedly did not base his conclusions concerning Santiago's walking ability on medical expert opinions.  Id. at 13–20.

### A. The ALJ Did Not Violate the Mandate Rule

The mandate rule "prevents relitigation in the trial court of matters that were explicitly or implicitly decided by an earlier appellate decision in the same case," United States v. Moran, 393 F.3d 1, 7 (1st Cir. 2004), and Santiago invokes that here as it applies to the ALJ and the scope of the prior remand.  "Put bluntly, 'the mandate rule requires that the trial court conform with the directions of the appellate court on remand.'"  United States v. Cheveres-Morales, 83 F.4th 34, 40 (1st Cir. 2023) (quoting United States v. Dávila-Félix, 763 F.3d 105, 109 (1st Cir. 2014)).  In construing the scope of a remand, "a district court must 'consider carefully both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.'"  Id. (quoting Dávila-Félix, 763 F.3d at 109).

By analogy to the relationship between a district court and an appellate court, district courts have applied the mandate rule in the context of SSA appeals.  See, e.g., Furey v. Saul, 501 F. Supp. 3d 29, 50 (D. Mass. 2020); Colon v. Saul ("Colon I"), 463 F. Supp. 3d 66, 72–73 (D. Mass. 2020); see Day v. Astrue, No. 12-cv-141-DBH, 2012 WL 6913439, at *4 (D. Me. Dec. 30, 2012) (explaining that "[t]he First Circuit has not had occasion to apply the mandate rule in the

12

context of Social Security decisions, but this court has done so in at least two cases"), report and recommendation adopted by 2013 WL 214571, at *1 (D. Me. Jan. 18, 2013).

The First Circuit has recognized an exception to the mandate rule, however, based on the presentation (on remand) of "substantially different" evidence. See Day, 2012 WL 691343, at *6 (citing United States v. Rivera-Martinez, 931 F.2d 148, 151 (1st Cir. 1991)); see also 20 C.F.R. § 404.983 (providing that "[a]ny issues relating to the claim(s) may be considered by the Appeals Council or administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in the case").

As already noted, after the ALJ's February 21, 2019 decision denying Santiago's disability claim, Santiago appealed the decision before another session of this Court. See Santiago, 2021 WL 11704593, at *1. Santiago argued in that appeal that the ALJ had erred at step five of the analysis because he did not discuss an affidavit submitted by Santiago after the hearing. See id. at *5–6. In the affidavit, VE David Meuse asserted that there were five "serious problems" with the VE testimony of Courtney Olds, who had originally testified before the ALJ. Id. at *2. The Court concluded that the ALJ erred by failing to reconcile significant conflicts between VE Olds' testimony and VE Meuse's affidavit. Id. at *6. As stated by the Court, "remand is warranted because the ALJ's Step 5 analysis failed to consider that the VE testimony was either flawed or incomplete for the reasons set forth in the Meuse affidavit." Id. (internal citation and quotation marks omitted).

On remand, the ALJ complied with the express terms of the Court's remand order in this case. Rather than rely upon VE Olds' testimony from the prior hearing, which had been called into question by VE Meuse's affidavit, the ALJ elicited new testimony from VE Melissa Fass-Karlin at the July 9, 2021 hearing. R. 2065, 2078–81. After that hearing, Santiago's counsel

requested a supplemental hearing because he did not have the opportunity to cross-examine VE Fass-Karlin, R. 2033; the ALJ then held another hearing on December 14, 2021, where VE Julian Shields testified (since the ALJ "was unable to secure the same [VE] for the final supplemental hearing," R. 2033) and Santiago was afforded an opportunity to cross examine him. R. 2033, 2052, 2059–61. Thus, on the present record and the ALJ noted, that "there is no longer any conflicting vocational expert information that must be rectified in this case." R. 2033.

Nonetheless, Santiago asserts that the ALJ violated the mandate rule because, by concluding that the ALJ had previously erred at step five, the Court had impliedly ordered the ALJ not to revisit prior steps of the analysis. D. 19 at 12–13. To support this proposition, Santiago cites Colon v. Saul ("Colon II"), No. 19-11553-WGY, 2020 WL 3840524, at *1 (D. Mass. Jul. 8, 2020). There, the court clarified a prior memorandum and order, in which the court held that the AC violated the mandate rule when it directed an ALJ "to return to a step that was analytically prior to the one the remand order identified." See Colon I, 465 F. Supp. 3d at 73. "In short, the Appeals Council directed the hearing officer to commit legal error by instructing him, in a way that clashed with the district court's order, to reassess a prior step in the inquiry that would have downstream effects on the issue the district court identified." Id. at 74.

The Commissioner argues that Colon cases were "wrongly decided," D. 21 at 6, and, for support, points to a decision by the Sixth Circuit in Hollins v. Massanari, 49 F. App'x 533, 536 (6th Cir. 2002). There, the Sixth Circuit explained that "[i]n some Social Security cases, district courts will include detailed instructions concerning the scope of the remand and the issues to be addressed," but that these cases "do not preclude the ALJ from acting in ways that go beyond, but are not inconsistent with, the district court's opinion." Id.

Here, the Court need not conclude that Colon cases were wrongly decided to resolve the parties' dispute because that case is distinguishable. In concluding that the district court's order impliedly barred the ALJ from revisiting earlier steps in the analysis, the court considered, *inter alia*, that the remand order contained "detailed instructions . . . concerning the legal or factual issues to be addressed." Colon I, 463 F. Supp. 3d at 73 (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)). The court construed the remand order as "instruct[ing] the Commissioner to: (1) [r]eview and apply the rules in Social Security Ruling 00-4p, especially those concerning conflicts between vocational expert testimony and the Dictionary of Occupational Title, if applicable; and (2) [o]ffer the claimant the opportunity for a hearing, take further action to complete the administrative record resolving the above issues, and issue a new decision." Id. at 71. Here, although the Court identified an error at step five of the analysis warranting reversal, nothing in the Court's prior remand order impliedly preclude the ALJ from revisiting earlier steps of the analysis, such that the ALJ violated the mandate rule.

Even assuming *arguendo* that the Court's prior remand order either expressly or impliedly barred the ALJ from reassessing Santiago's impairments at step two or the RFC, here, the "substantially different" evidence exception applies. See Rivera-Martinez, 931 F.2d at 151. Here, the relevant time period for the ALJ's pre-remand decision was from November 9, 2016 to February 21, 2019, R. 21, 32; however, after remand, Santiago's alleged onset date was amended, see R. 2061–62, and so the relevant time period was from October 8, 2018 to December 27, 2021, the date of the ALJ's final decision. R. 2019–2034. As to this latter time period, the evidence before the ALJ was substantially different, thus warranting a change to Santiago's RFC concerning his ability to stand or walk. For instance, according to a medical report dated April 12, 2021, Santiago had received injections to treat his back and leg pain, resulting in "over 80% relief of his

15

pre-injection symptoms for [a] year and [a] half before his pain started to reoccur." R. 2458. The same physician noted that Santiago "walks with good sagittal plane balance." R. 2459. Medical examinations also indicated that Santiago had reported walking "a lot," "walking for exercise daily," remaining "active" throughout the day, performing housework and taking care of his ex-wife. R. 2409, 2411, 2415, 2417. Several examinations showed that Santiago was "ambulating independently" with "steady gait." R. 2469, 2491, 2506, 2524, 2540, 2595. On the basis of these medical records, the ALJ found that the evidence "clearly support[ed] a finding that [Santiago's] ability to stand and walk has improved." R. 2029. Accordingly, the ALJ did not err in modifying some prior determinations to reflect the "substantially different" medical evidence before him. See Rivera-Martinez, 931 F.2d at 151.[5]

### B.   The ALJ's RFC Was Supported by Substantial Evidence

Santiago also argues that the ALJ erred in determining Santiago's RFC with respect to his ability to walk or stand. D. 19 at 13–20. "[T]he general rule is that an expert is needed to assess the extent of functional loss." Roberts v. Barnhart, 67 F. App'x 622–23 (1st Cir. 2003). "If a claimant has put her functional capacity sufficiently at issue, the hearing officer is obliged to measure the claimant's relevant capabilities and 'to make that measurement, an expert's RFC

---

[5] Comparing the ALJ's pre-remand and post-remand decisions, Santiago identifies some variance in the ALJ's step two findings. See D. 19 at 12. Specifically, Santiago notes that the ALJ changed Santiago's impairment of "subacromial bursitis" from severe to non-severe and removed PTSD and borderline intellectual functioning from the list of impairments. Id. Because the ALJ found multiple other severe impairments at step two and proceeded to consider both severe and non-severe impairments at the RFC stage, any error related to the ALJ's changing of "subacromial bursitis" from severe to non-severe is harmless. See Noel v. Astrue, No. 11-30037, 2012 WL 2862141, at *6 (D. Mass. July 10, 2012). Moreover, although the ALJ removed PTSD and borderline intellectual functioning from the list of impairments at step two, this did not result in any meaningful change to the ALJ's determination of his mental RFC; indeed, the ALJ's mental RFC was substantially the same in both his pre- and post-remand decisions. See, e.g., R. 25; R. 2024.

evaluation is ordinarily essential.'" Beyene v. Astrue, 739 F. Supp. 2d 77, 83 (D. Mass. 2010) (quoting Santiago v. Sec'y of Health & Hum. Servs., 944 F.2d 1, 7 (1st Cir. 1991)). "Thus, a hearing officer's determination of a claimant's RFC made without any assessment of RFC by an expert is unsupported by substantial evidence and must be remanded to obtain further functional evidence." Beyene, 739 F. Supp. 2d at 83.

Prior to remand, the ALJ had determined Santiago could "only stand and walk four hours per day and sit for six hours per day." R. 25. The ALJ arrived at this conclusion after giving "great weight" to the state agency expert opinions. R. 27. On remand, the ALJ still credited these experts but, due to the lapse in time, afforded them only "partial weight," R. 2029, given additional, medical evidence in the record—which, as already noted—indicated that Santiago's walking and standing ability had improved during the pendency of Santiago's prior appeal to the district court. See R. 2409, 2411, 2415, 2417, 2469, 2491, 2506, 2524, 2540, 2595. Because the ALJ based his change to Santiago's RFC on the combination of the expert opinions and additional medical evidence, this is not a case where the ALJ reached his determination "without any assessment of RFC by an expert." See Beyene, 739 F. Supp. 2d at 83. Rather, the ALJ reasonably considered the whole record, including expert opinions, to discern Santiago's RFC, as required by Social Security regulations. See 20 C.F.R. § 404.1545(a)(1) (providing that a claimant's RFC is assessed "based on all the relevant evidence in [the claimant's] case record]"); 20 C.F.R. § 416.945(a)(3) (requiring an ALJ to assess the claimant's RFC "based on all of the relevant medical and other evidence"). Accordingly, remand is not warranted.

**V.   Conclusion**

For the reasons stated, the Commissioner's motion to affirm, D. 20, is ALLOWED, and Santiago's motion to reverse and remand, D. 19, is DENIED.

**So Ordered.**

<u>/s Denise J. Casper</u>
United States District Judge
